(C. D. 382)

L. H. MUELLER v. UNITED STATES

United States Customs Court, Third Division

(Decided October 10, 1940)

*Strauss & Hedges; Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel G. McGrath*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., not participating

CLINE, Judge: In these suits against the United States the plaintiff seeks to recover additional duty assessed by the collector of customs at the rate of 10 per centum ad valorem under section 304 (b) of the Tariff Act of 1930 on the ground that the merchandise was not legally marked at the time of importation.

At the trial the two cases were consolidated and tried together. The facts in the cases differ in some respects, so they will be considered separately. In protest 7811–K the particular part of the importation herein involved consists of two cases of brushes, numbers J. G. 4357 and 4358. It appears from an examination of the entry that the importer included the additional duty in his computation of the amount of duty payable, for directly under the computation of duty relating to those two cases appears the notation "N. L. Marking penalty—$93.60." This sum—$93.60—is included in the total amount of duty payable. The following explanation of this item is contained on the face of the entry:

Cases #4357/8 were originally imported under E #760567 dated 10/22/37 and upon examination were found not to have been marked to show country of origin. In order to have shipments marked cases were returned from Appraiser's stores to senders under Export #16379. Now that the cases have been returned marked, 10% additional duty is being added to regular duty as shown above.

Case #4369 originally arrived here on the Str. Europa 11/1/37 and was immediately exported under Export Entry #14810 to senders to have contents marked as required by law if they were not so marked. No warehouse duty paid entry was made before for this case.

An examination of the entry does not indicate that any additional marking duty was assessed on the merchandise in case number 4369.

The only witness called in the case was Mr. L. H. Mueller, the importer. He testified that he examined the brushes in cases 4357 and 4358 and found that they were marked with the legend "Made in Germany" to indicate the country of origin at the time of arrival; that previous to the arrival of the merchandise covered by entry herein involved (816993) two cases bearing the same numbers arrived on October 22, 1937, and were entered under entry 760567; that, at the time, a question was raised by the customs officers as to the legal marking of the merchandise in those two cases; that he did not get physical possession of the cases at that time but he caused the merchandise to be reexported to Germany; that he instructed the factory that he would not accept any merchandise unless it was legally marked; that he did not know whether the brushes imported in cases 4357 and 4358 under the entry herein involved (816993) were the same ones which were imported in cases 4357 and 4358 under entry 760567.

On cross-examination the witness testified that he did not remember making the following statement:

Cases 4357 and 4358 were subsequently marked abroad and returned to the United States on steamship Bremen which arrived February 10, 1938, and entered under entry 816993.

The witness was then shown a letter on two sheets of paper and asked if his signature appeared at the bottom of the second page and he answered that the signature was his and he obviously must have made the statement. The letter was received in evidence and marked "Exhibit 1."

The exhibit appears to be a letter written by the importer and addressed to the collector. It contains the following statement.

For your further information, I would state that cases #4357/8 were originally entered under entry #760567 on October 22, 1937 and these are the cases on which I paid duty and which were reported by Customs Authorities not to have been marked to show country of origin. As the necessary equipment to mark these brushes was not available here, I returned these two cases to the manufacturers under export entry #15157 to complete marking. Cases #4357–8 were subsequently marked abroad and returned to the United States on the SS Bremen which arrived February 10, 1938 and entered under entry #816993.

In addition to paying regular duty on these cases I have also paid additional duty of 10% amounting to $93.60. Your attention was called to circumstances surrounding these cases in a statement appearing on this entry, which undoubtedly will serve as an additional proof of my intention to comply with customs regulations and not to defraud the Government from any revenue which is legally due it.

On redirect examination the witness testified that he did not know whether the brushes in the first shipment mentioned were the same as those in the cases in the entry herein involved. All he knew was that they bore the same marks and numbers.

Counsel for the plaintiff argues in his brief that, since the record does not show that the brushes which were covered by entry 760567 and found by the appraiser to be without marking were the same brushes covered by entry 816993 herein involved, it is not established that the merchandise in entry 816993 was imported previously and was exported in order that a legal marking might be performed and cites, *McKesson & Robbins, Inc.* v. *United States*, Abstract 32550, 68 Treas. Dec. 1130. In that case the court quoted article 1253 of the Customs Regulations of 1931 reading:

Art. 1253. Exportation—When not bona fide. (a) An exportation is a severance of goods from the. mass of things belonging to this country with the intention of uniting them to the mass of things belonging to some foreign country. The shipment of merchandise abroad with the intention of returning the same to the United States is not an exportation. Merchandise of foreign origin returned from abroad under these circumstances is dutiable according to its nature, weight, and value at the time of its original arrival in this country.

The facts in the case cited were somewhat similar to those in the case here under consideration except that the record in that case contained no statement of the importer, such as is found in Exhibit 1, that the cases "were subsequently marked abroad and returned to the United States on the SS *Bremen* which arrived February 10, 1938, and entered under entry No. 816993." The court said:

It will be noted that article 1253, Customs Regulations of 1931, defines exportation as—

a severance of goods from the mass of things belonging to this country *with the intention* of uniting them to the mass of things belonging to some foreign country.

The term was similarly defined in *Swan & Finch* v. *United States*, 190 U. S. 143, 145; 47 L. ed. 984; and *Acker* v. *United States*, 1 Ct. Cust. Appls. 404, T. D. 31481. Counsel for the plaintiff concedes that merchandise covered by the same order as that for the goods herein was previously brought into this country and exported because not considered a good delivery in its then unmarked condition. Since the aforementioned definition of "exportation" includes an "intention" of uniting the goods to the mass of things in a foreign country, we are of the opinion that the best evidence of the intention of the importer herein at the time the previous shipments was returned to the country of exportation would have been the testimony of someone connected with the importing firm who has personal knowledge of the facts. No such evidence was introduced. Moreover, no competent evidence was introduced at the trial to establish that the merchandise here involved is the identical merchandise previously imported and returned to the foreign vendor. A sample taken from the shipment was received in evidence as Exhibit 1, and the customs examiner who passed both shipments testified that although he had placed identifying marks on the containers of the oil in the previous shipment he does not see any of the said marks on Exhibit 1. He invited the court's attention, however, to the fact that the label on Exhibit 1 states that it is "Can No. 26", and testified that there also was a can of that num-

ber in the prior shipment. This, however, merely shows that the cans in each shipment were numerically marked, and we do not consider it as sufficiently competent evidence to form the basis of a finding that the three cases of essential oils here involved are the identical goods previously imported and returned.

On the record presented, there being no evidence before us to show that the importer herein returned the previous shipment to the manufacturer *with the intention* of reimporting same, nor that the subsequent shipment now in controversy consists of the identical goods previous exported, we are unable to find that the merchandise covered by the entry against which this protest is lodged was previously imported not legally marked. Since the record establishes that the immediate containers of the essential oils covered by the entry here involved were legally marked at the time of importation, the protest is sustained * * *. [Italics quoted].

Counsel for defendant distinguishes the above case in his brief by pointing out that the examiner in that case placed identifying marks on the cans of the first importation and could not find them on the cans of the second importation which would indicate that the goods were not the same in the two shipments while in this case there are no distinguishing features in the merchandise tending to show that it was not the same goods previously imported.

While the plaintiff testified before the court that he did not know whether the brushes in cases 4357 and 4358, covered by the entry herein involved, were the same brushes which were previously imported and entered on October 22, 1937, under entry 760567, the statement in Exhibit 1, above quoted, and the statement on the entry which was made a part of the record in this case, considerably weakens his testimony and indicates that at the time of entry he believed them to be the same. In our opinion, the testimony of the plaintiff is not sufficient to overcome the presumption of correctness attaching to the collector's decision, and we conclude that cases 4357 and 4358 on the entry in this case contain the same brushes which were previously imported on entry 756567 and found not to be legally marked.

In the case of *American Aniline Products, Inc.* v. *United States*, Abstract 34964, 70 Treas. Dec. 1146, a shipment of coal tar products which had been imported into the United States was found not to be legally marked. The merchandise was not withdrawn from customs custody but was shipped to Canada where it was legally marked, after which it was brought back to the United States. The court held, upon the authority of *Swan & Finch* v. *United States*, 190 U. S. 143, that there was no exportation of the merchandise from the United States to Canada because there was not an intent to unite the merchandise taken from this country with the mass of things belonging in Canada and that the additional duty taken under section 304 of the Tariff Act of 1930, on the ground that the merchandise was not legally marked when imported, was properly assessed. On the authority of the decision last cited, protest 7811–K is overruled and judgment will be entered in favor of the defendant.

The facts in protest 6689–K differ somewhat from those in protest 7811–K. Although the entry filed upon importation was amended, both the original and the amended entries are contained in the record. The entry filed upon importation contains the following notation under the description of the two cases of hair pencils, numbers 4403 and 4404, herein involved:

(This shipment was originally imported on the Str. Deutschland on 11/10/37 and was exported on Str. Deutschland under Exp. #16379.)

Neither the original entry nor the amended entry bears any notation showing that marking duty of 10 per centum ad valorem under section 304 (b) of the tariff act was assessed, but the entry bears a stamp showing that there was an additional deposit of $97.30, without stating the reason for the deposit. The collector's report to the court in answer to the protest states, however, that an additional duty at the rate of 10 per centum ad valorem under section 304 (b) was assessed.

Witness Mueller testified that he examined the merchandise in cases 4403 and 4404 at the time of importation under entry 808045, herein involved, and found that it was marked "Made in Germany"; that prior to the arrival of the cases covered by this entry another shipment had arrived covering the same kind of merchandise and having the same case numbers; that because in a previous shipment he had had difficulty about the marking of the goods he directed his customs broker to reexport the shipment on the steamship *Deutschland*, without making entry, on the assumption that there might be difficulty with respect to the marking of the goods; that the merchandise was exported without examination by him or anyone else so far as he knew; that he did not know whether the brushes covered by entry 808045 were the same as those previously imported on the *Deutschland* in November 1937. On cross-examination the witness testified that cases 4403 and 4404 originally arrived on the *Deutschland* some time in November 1937 and the two cases (4403 and 4404) were imported on January 20, 1938, under entry 808045; and that he placed the order in August 1937.

The defendant then offered in evidence entry 808045, consular invoice number 2905, and a private invoice attached to the consular invoice.

On redirect examination the witness, in explaining the statements he made on cross-examination, testified that he did not know whether the cases which were imported on the *Deutschland* in 1937 were the same cases which were imported under entry 808045, but they bore the same marks and numbers.

Exhibit 1 contains the following statement with respect to the merchandise in cases 4403 and 4404, covered by entry 808045:

Entry #808045 covers in part J. F. 4403/4, two cases of hair pencil brushes which have originally been imported into the United States on the S. S. *Deutschland* on November 19, 1937. These cases according to the invoice I received, contained the same type of brushes as were imported under Entry #760567. Believing that since brushes covered by this entry were not marked to show country of origin as required by law, I assumed that cases #4403/4 may have arrived in the United States in the same condition. In view of this, I returned these cases on the S. S. *Deutschland* which sailed from New York on November 24, 1937 under Entry #16379, to the manufacturers to complete marking if brushes were not marked according to requirement.

When cases 4403/4 were re-imported in the United States and entered under Entry #808045, statement was made on entry that the cases were here before.

It is apparent, therefore, that in this case there could not have been any violation of customs laws as no formal customs entry was filed on the shipment.

There is nothing in the papers to indicate that the merchandise was not legally marked. The report of the appraiser in red ink on the summary sheet attached to the invoice is:

Case marked. Immediate containers marked. Merchandise marked. No delivery issued. Please note statement of law division on this summary sheet.

The following unsigned statement appears in black ink on the summary sheet.

This shipment exported for the purpose of marking mdse which the importer claimed could not be marked in this country. Invoice & entry endorsed to this effect by importer. Take marking duty. No further action.

The above statement may be the "statement of the law division" referred to in the appraiser's return. An examination of the invoice and entry does not disclose the endorsement on the invoice and entry by the importer referred to in the statement on the summary sheet which we assume to be the statement of the law division referred to. The consular invoice, number 2905, which was introduced in evidence, contains the statement "Goods are marked 'Made in Germany'" and the private invoice attached thereto contains the statement "2 cases marked J. F. 4403/04 Made in Germany." The statement on the entry that the shipment was originally imported on the *Deutschland* on 11/10/37 and was exported on the *Deutschland* was quoted above. There is no statement on any of the papers in this case to the effect that the shipment was exported for the purpose of marking.

From all that appears in the record, cases 4403 and 4404 in the shipment on the *Deutschland* were returned to Germany on the same vessel and under substantially the same conditions as the merchandise in case 4369 covered by protest 7811–K, above referred to, and which was not assessed with additional marking duty by the collector.

We are of opinion that the merchandise in cases 4403 and 4404, covered by protest 6689–K, is not shown by the record to have been imported without a legal marking, either when the cases bearing those numbers were imported on the steamship *Deutschland* in November,

1937, or when similarly numbered cases were brought into the country on the steamship *Bremen* in January, 1938. There is no evidence showing that the merchandise was imported into the United States without a legal marking at any time. We find that the only evidence in the case relating to the marking of the merchandise shows that it was legally marked when imported. Protest 6689–K is sustained, and, to that extent, judgment will be entered in favor of the plaintiff.