**No. 51179.**—Protest 83248–K of E. Eugene Rice, M. D. (St. Louis).

EKWALL, Judge: This case has been submitted upon the official papers transmitted to the court by the collector. From the record as thus made it appears that certain wool suiting valued under $100 which had been produced in Scotland was purchased by the plaintiff in Canada and entered under his baggage declaration, free of duty. Upon the arrival of the material in this country it was found to be the wrong color, whereupon plaintiff returned it to the seller in Canada for exchange. The Canadian customs officials refused to release the package without payment of duty charges. For that reason the seller declined to accept the same and it was returned to the plaintiff.

Upon the return of the goods to the United States duty was assessed at the appropriate rate for wool cloth under the provisions of paragraph 1109 (a), Tariff Act of 1930. From this assessment the instant protest was filed in which plaintiff claims that no duty is assessable on the merchandise.

Considerable correspondence was entered into between the importer and the customs officials in the United States in regard to the assessment, which correspondence has been admitted in evidence by consent of Government counsel. It is clear from a perusal of the various letters in evidence that the customs officials were anxious to render all possible aid to this importer, but were unable to grant free entry to the merchandise under the statute.

It is the opinion of the court and we so find that duty was properly assessed. The goods were of foreign manufacture and upon reimportation were subject to duty. The privilege of free entry was granted upon the first entrance of the merchandise into this country under the provisions of section 498 (a) (1) and (6), Tariff Act of 1930, which grants such privilege to merchandise not exceeding $100 in value contained in the baggage of a person arriving in the United States. However, there is no provision in the statute for the free entry of such foreign merchandise sent out of the United States and returned.

The early case of *Ten Cases of Opium*, 23 Fed. Cas. page 840, Case No. 13828, involved the seizure of a quantity of opium which was brought by steamship from the foreign port of Victoria to the port of Portland, Oreg., and there unladen without a permit and seized by the collector of customs. While the facts in that case are not analogous to the situation here presented, the statements of the court are pertinent. We quote as follows:

\* \* \* If goods once admitted into the United States from a foreign port are reexported, the effect of such admission ceases, and if such goods are attempted

to be reimported into the United States, they must be taken to be what they are in fact—goods then brought into the United States from a foreign port or place
* * *

See also *Moore Dry Goods Co.* v. *United States*, 11 Ct. Cust. Appls. 449, T. D. 39531.

Although the situation presented in the instant case proved unfortunate for the importer, the record discloses that the customs officials rendered all the aid they were able to give to him and assisted him in every way possible in making proper entry of the goods in order that he might file a protest against the assessment. It would seem to the court that importer's only redress is against the seller of the goods in Canada by reason of whose mistake the situation seems to have arisen.

Upon the record we are unable to grant relief to the plaintiff. The protest is therefore overruled.

Judgment will be rendered for the defendant.

### DISSENTING OPINION

CLINE, Judge: The issue in the instant case is whether merchandise, which was admitted free of duty as an article not exceeding $100 in value, acquired by a returning resident of the United States (paragraph 1798, Tariff Act of 1930, as amended by the Customs Administrative Act of 1938), is subject to duty on its return to the plaintiff after he had sent it back to Canada for exchange. No exchange was effected since the Canadian seller refused to accept the goods, because of a demand for Canadian duties, and they were returned to the plaintiff. The solution of the problem depends upon whether the merchandise was "exported" to Canada and consequently "reimported" into the United States. If it was not reimported, no duty can be assessed.

In *Swan & Finch Co.* v. *United States*, 190 U. S. 143, 145, the court defined the term "export" as follows:

* * * Whatever primary meaning be indicated by its derivation, the word "export" as used in the Constitution and laws of the United States, generally means the transportation of goods from this to a foreign country. "As the legal notion of emigrating is a going abroad with an intention of not returning, so that of exportation is a severance of goods from the mass of things belonging to this country with an intention of uniting them to the mass of things belonging to some foreign country or other." [17 Op. Attys. Gen. 583.]

In a Treasury Department letter quoted in 30 Treas. Dec. 785, T. D. 36396, that definition was construed to mean that two conditions must obtain for a removal of goods to constitute an exportation, "first, an intent to export, and, secondly, *the execution of the purpose by having the goods mingle with and become a part of the mass of things belonging to the foreign country to which transported.*" [Emphasis supplied.] There German hosiery was shipped to Canada from New York but was refused entry because it was of German origin and returned to the United States. Duty had been paid on the original importation into the United States, and the Treasury Department held that no further duty was required since its removal to Canada was not an exportation and therefore its return was not a reimportation.

In the instant case also, since Canadian duties were not paid, the goods never became a part of the mass of things belonging to that country. While plaintiff may have intended that the material mingle with the goods of Canada, that never happened in fact. Therefore, there was no exportation nor reimportation of the merchandise and no duty should have been assessed.

In *Van Camp Sea Food Co. (Inc.)* v. *United States*, 56 Treas. Dec. 415, T. D. 43661, duty was assessed by the collector on a gas engine salvaged from an American vessel which had been wrecked upon the coast of Mexico. It was held that

the engine had never been exported and was not subject to duties, since "there was no intent to sever it from the mass of things in the United States and have it enter the commerce of a foreign country."

In *American Aniline Products, Inc.* v. *United States*, 70 Treas. Dec. 1146, Abstract 34964, drums which were not legally marked were imported from England and then shipped to Canada where proper markings were placed upon them. The collector assessed an additional duty because the goods were not legally marked at the time of original entry. The court said:

* * * There is nothing before us to show that the coal-tar products here in controversy were at any time united with the commerce of Canada, or intended to be so united. The existence of such an intention, or *other facts covering the question of whether or not this merchandise actually mingled with the mass of things in Canada*, are matters which would be established only by competent evidence. No such evidence was offered in the case at bar, and the collector's decision that the shipment was not so united with the commerce of Canada as to render its removal from this country a bona fide "exportation" is presumptively correct. [Emphasis supplied.]

See also *L. H. Mueller* v. *United States*, 5 Cust. Ct. 125, C. D. 382.

Although these cases emphasize the necessity of an *intention* that the goods be mingled with those of the foreign country, I believe it is equally necessary that the goods *in fact* mingle with those of the foreign country in order that the removal from this country be considered an exportation.

It has been held in other situations that intent alone without execution is not sufficient to establish the dutiable status of an article. *Loewenstein* v. *United States*, 22 C. C. P. A. 433, T. D. 47425; *Columbia Phonograph Co.* v. *United States*, 24 C. C. P. A. 123, T. D. 48417. In the *Loewenstein* case, *supra*, certain kidskins were imported with the intent that they be used in making shoes and thus entitled to a lower rate of duty under paragraph 1530 (c), Tariff Act of 1930. However, a part of the shipment was not so used and was returned to the exporter. This portion was held subject to the higher rate of duty since the importer had not shown the intent at the time of importation and the actual use of the merchandise in the manufacture of footwear. The court said (p. 438):

* * * We think that Congress never intended to make the dutiable status of the merchandise at bar depend solely upon the fact of whether or not the importer intended at the time of ordering and importing the merchandise to sell it to some prospective customer for shoe-making purposes or to use it himself for such purposes.

So here, the dutiable status of the material cannot depend upon the fact that the importer returned it with the intent that it be exchanged for something else but must depend upon the fact that it never did mingle with the mass of things in Canada.

Since the merchandise herein was never exported and re-imported, the protest should be sustained.