(C. D. 1468)

F. W. MYERS & Co., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 16, 1952)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for the plaintiff. *Charles J. Wagner*, Acting Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: An importation consisting of miniature toy animals of Japanese origin, which after arrival in this country were sold to a concern in Canada and shipped to that country, is involved in this case. The Canadian customs officials refused to permit entry of the merchandise due to the fact that under Canadian law and regulations this was prohibited merchandise. The goods were returned to the United States and entered at the port of Malone, N. Y., by a firm of customs brokers. Upon the basis of an affidavit of exportation and the invoice, which stated that the goods were of American origin, they were entered as American goods returned, entitled to entry free of duty under paragraph 1615 of the Tariff Act of 1930. It appears that this entry was made in error as the goods were, in fact, made in Japan and were so marked. At the hearing, it was agreed that it was the intention of the owner of the merchandise to export the same to Canada and that it was returned to the United States from Canadian customs custody and had never entered Canadian commerce.

Duty was assessed thereon by the collector of customs at appropriate rates under the provisions of paragraph 1513 of the Tariff Act of 1930, as toys therein described. Plaintiff protested this assessment on the ground that since the goods had been refused entry into Canada by the Canadian Government, they never had been exported from the United States; therefore, their physical return from Canada did not constitute an importation and no duties are due. It is claimed

on the part of the Government that the merchandise was exported as that term has been interpreted by this court and our appellate court. Plaintiff's contention is based on the theory that while there was an intent to export the goods to Canada, this intent was not carried out due to the provisions of Canadian law, and that an intent to export alone is not sufficient to constitute an exportation. In support of this theory, it cites a ruling of the Treasury Department, T. D. 36396, published in 1916, in which the collector of customs at the port of New York was instructed to release certain goods without the payment of duty on the ground that there never had been an exportation of the merchandise for the reason that the Canadian authorities denied entry of the merchandise and would not permit the goods to become part of the commerce of that country. The Treasury Department construed the definition of "exportation" as given in an opinion of the Attorney General of July 2, 1883 (17 Op., 579–583), which stated that "the legal notion of exportation is a severance of goods from the mass of things belonging to this country with an intention of uniting them with the mass of things belonging to some foreign country," as follows:

Under this definition, which was quoted with approval by the Supreme Court of the United States in the case of Swan & Finch Co. v. United States (190 U. S., 145), it appears that two conditions must obtain—first, an intent to export, and, secondly, the execution of the purpose by having the goods mingle with and become a part of the mass of things belonging to the foreign country to which transported.

The Department was of the opinion that because the second condition, i. e., the execution of the purpose, was not fulfilled, there had been no exportation and, therefore, the return of the goods to the United States did not constitute an importation.

The above theory has not been accepted by the courts, the majority of the decisions holding that the intention of the parties at the time of shipment is the controlling factor. *Moore Dry Goods Co.* v. *United States*, 11 Ct. Cust. Appls. 449, T. D. 39531; *United States* v. *American Railway Express Co.*, id. 505, T. D. 39659; *United States* v. *The National Sugar Refining Co.*, 39 C. C. P. A. (Customs) 96, C. A. D. 470; *Fred'k Vietor & Achelis* v. *United States*, 51 Treas. Dec. 11, T. D. 41937; *E. Eugene Rice* v. *United States*, 16 Cust. Ct. 298, Abstract 51179.

In a recent case, *Nassau Distributing Co., Inc.* v. *United States*, 29 Cust. Ct. 151, C. D. 1459, the court had before it this same question. There, merchandise which had previously been imported, was shipped c. o. d. to a purchaser in Mexico. The purchaser in Mexico refused to pay for the goods, and they were placed in storage in Mexico for approximately 6 months and, thereafter, returned to the seller. Upon their return to the United States, they were assessed for duty at appropriate rates. The court held that the evidence established

that at the time of shipment there was an intention to export; that the shipment into Mexico constituted an exportation and the return of the goods to this country an importation. Therefore, it held that the goods were properly dutiable.

We find nothing in the instant case to distinguish it from the reasoning of the cited cases. The protest is therefore overruled.

Judgment will be rendered accordingly.