(C. D. 747)

PAPER SERVICE CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 12, 1943)

*Tompkins & Tompkins (J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Dorothy C. Bennett* and *Joseph B. Brady,* special attorneys), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

WALKER, Judge: This protest is directed against the refusal of the collector of customs at the subport of Cincinnati to allow drawback of 99 per centum of the duties paid on imported merchandise used in the United States in the manufacture of 13 bales of paper-lined burlap bags under the provisions of section 313 of the Tariff Act of 1930.

It appears that the refusal of the collector to allow such drawback was based upon the fact that the notice of intent covering the same was not filed in time as required by article 1044 of the Customs Regulations of 1937. The merchandise exported apparently originated in Cincinnati and was shipped therefrom to New York, where it was laden on board the export vessel, the S. S. *Quirigua.* The customs regulations provide two alternative methods of handling such shipments from the point of view of drawback, which are detailed in articles 1044, 1045, 1046, and 1047 of the customs regulations. In this case, the exporter evidently decided to use the method outlined in articles 1044 and 1047, relating to direct shipments from the port of exit.

Article 1044, *supra,* so far as pertinent, reads as follows:

Art. 1044. Notice of intent to export—Local or direct exportation from a seaboard or frontier port.—(a) At least 6 hours, but not more than 90 days, before the lading of the merchandise to be exported, the claimant for drawback, or his duly authorized agent, shall file with the collector of customs at the port of exportation a notice of intent to export on customs Form 7511. A duplicate copy of the notice of intent shall be delivered to the customs officer in charge at the place of lading at the time the goods are delivered to the exporting vessel or conveyance. Such notices of intent *shall give the name of the exporting vessel,* or in the case of a vehicle the name of the carrier, and place of lading, describe the merchandise by marks and numbers and state in detail the kind and contents of the packages, the quantity, weight (gross and net), gauge, or measure. [Italics added.]

In the case at bar it appears that the exporter failed to deliver a duplicate copy of the notice of intent to the customs officer in charge at the place of lading as required by article 1044, *supra,* but that

defect was not necessarily fatal under the provisions of article 1055 of the same regulations, provided a timely notice of intent to export was filed with the collector, and that no other act or omission on the part of the shipper, the carrier, or the agent of either, resulted in the failure to secure inspection.

According to the testimony of Virginia T. Wess, a member of the firm of customhouse brokers who handled the particular drawback matter in question for the actual exporters, five copies of the notice of intent were mailed from Cincinnati addressed to the collector of customs at the port of New York on March 14, 1938. Miss Wess admitted that at that time the name of the exporting vessel did not appear on such notices. From a letter dated March 27, 1940, addressed to Henry A. Wess, Inc., and signed by the assistant collector at the port of New York (which is in evidence as part of collective exhibit 2) it appears that the notices were received in the office of the New York collector on March 16, 1938, but were immediately returned to Henry A. Wess, Inc., for insertion of the name of the exporting vessel. They were received by the Wess firm on March 18, and the name of the exporting vessel was immediately inserted and the notices remailed by air mail to the New York collector, who, it appears, received them on the 19th at 12:26 p.m. In the meantime the merchandise had been laden on board the *Quirigua* at noon on the 19th and had not been inspected prior to lading.

It is claimed by the plaintiff that the notice received by the collector on March 16 was "sufficient to have enabled the customs officials at New York to ascertain the fact that it was the steamer *Quirigua* because the merchandise was described, and the consignee stated, 'Care of Collector of Customs, Pier 3, New York,' for export to some party in Panama City," and that it was timely. As to the latter point, it is suggested that the vessel did not sail until the afternoon of March 19, 1938, and, also, that "the alleged failure to file such notice of intent, with name of vessel *Quirigua* inserted, at least six hours before the lading of the merchandise, was due to lack of proper governmental action or unwarranted interpretation of legal requirements on the part of the customs officials, rather than to any laches or lack of reasonable diligence or required action on the part of the Cincinnati plaintiff or its agent * * *."

There can be no question but that the regulations clearly require that the notice of intent "shall give the name of the exporting vessel or carrier." It is a matter of common knowledge that more than one vessel may sail from any particular New York City pier. While it is suggested by plaintiff's counsel that information as to the name of the vessel could be more easily ascertained by the collector in New York than *by* the shipper in Cincinnati—which is open to some doubt—there is nevertheless nothing to show that such requirement placed any undue hardship upon the shipper at the inland place, or that it was in

any way unjust or unfair. From the record it is apparent that the name of the exporting vessel was easily enough determined by the shipper after attention was called to the omission by the collector. Furthermore, the regulation in question places the burden on the claimant for drawback to file proper and timely notices of intent, and the collector was under no duty to do the claimant's work by ascertaining which ship of those which sail from the pier named in the notice was intended to be the exporting vessel.

Regulations such as are here involved have often been held to be mandatory in character, so that strict compliance therewith is a condition precedent to the right of the claimant to recover under the drawback provisions. *Spencer Kellogg & Sons, Inc.* v. *United States*, 13 Ct. Cust. Appls. 612, T. D. 41459, and *United States* v. *Ricard-Brewster Oil Co.*, 29 C. C. P. A. 192, C. A. D. 191, and cases therein cited.

As delivered to the collector on March 16, therefore, the notices of intent were defective and would not support a claim for drawback. On the question of whether the notices were received on the 19th at least 6 hours before the *Quirigua* sailed, it is to be noted that article 1044, *supra*, requires that notice be given at least 6 hours before the lading of the merchandise, not 6 hours before the exporting vessel sails, and the record is clear that the notices were received after lading.

On the question of whether the failure to file timely notices was due to "lack of proper governmental action or unwarranted interpretation of legal requirements on the part of the customs officials," as charged by plaintiff's counsel, we observe that there was, apparently, no delay on the part of the collector in returning the defective notices to the shipper. Had the collector retained the notices and notified the shipper by letter it is obvious that proper notices would not have been received in any event sooner than they were. The fault here lies, not with the customs officials, but with the plaintiff.

On the record presented we have no other course than to overrule the protest, and judgment will issue accordingly.