(C. D. 953)

W. R. GRACE & CO. v. UNITED STATES

United States Customs Court, First Division

(Decided October 11, 1945)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Robert C. O'Grady* and *John J. McDermott*, special attorneys), for the defendant.

Before OLIVER and COLE, Judges

OLIVER, Presiding Judge:  In this case plaintiff seeks refund, as drawback under section 313 of the Tariff Act of 1930, of 99 per centum of the duties paid on the importation of raw perilla oil used in the manufacture in the United States of 20 drums of refined perilla oil which were exported.  The collector of customs refused to allow drawback, according to the notation on the drawback entry, for the reason that the merchandise was not exported under customs supervision, as required by the applicable Customs Regulations of 1937, prescribed by the Secretary of the Treasury under authority of said section 313, and in force at the time involved.

There is no question concerning the facts of importation of the raw material and its manufacture in the United States by the Harbor Tank Storage Co., Inc., nor as to compliance with the customs regulations relating to such importation and manufacture. The refined perilla oil was intended to be exported with benefit of drawback, and to that end, at 10:29 a. m. on March 29, 1940, a notice on customs Form 7511-A of intent to export the same was filed in the office of the collector of customs at the port of New York. The said notice of intent, and the duplicate copies thereof, specified that the merchandise was to be exported via the New York Central Railroad from the port of Niagara Falls, N. Y., to a consignee in West Toronto, Ontario, Canada.

By virtue of the provisions of article 1045 (b), article 1044 of the Customs Regulations of 1937, relating to notices of intent to export, applies to the situation at bar, and paragraph (a) thereof reads as follows:

> At least 6 hours, but not more than 90 days, before the lading of the merchandise to be exported, the claimant for drawback, or his duly authorized agent, shall file with the collector of customs at the port of exportation a notice of intent to export on customs Form 7511. A duplicate copy of the notice of intent shall be delivered to the customs officer in charge at the place of lading at the time the goods are delivered to the exporting vessel or conveyance. Such notices of intent shall give the name of the exporting vessel, or in the case of a vehicle the name of the carrier, and place of lading, describe the merchandise by marks and numbers and state in detail the kind and contents of the packages, the quantity, weight (gross and net), gauge, or measure.

As has been noted, the form used for the original and the duplicate notices of intent in the case at bar is No. 7511-A. On its face it has printed the words "Where deposited" with a space to be filled in by the claimant, and in that space there are typewritten the name and address "Harbor Tank Stge. Co., Guttenberg, N. J." Presumably, this was intended to be the place of inspection and lading.

It appears that there was no regularly assigned customs officer in charge of that place, and the superintendent of the plant, one Albert Mogerley, testified at the trial that he asked one of his assistants to call the Edgewater customs station to have an inspector weigh the drums before they were shipped out. What the response to that call was, or whether it was made, does not appear, but Mr. Mogerley said that he subsequently discovered that there was a customs inspector in the plant supervising another weighing operation, and he thereupon caused a request to be made of that inspector, one Gordon A. Green, to weigh the drums in question.

Although Inspector Green had no instructions from his superiors with respect to the shipment in question, and although it appears that he had no business at the plant other than the separate weighing operation in which he was engaged, he acceded to the request and supervised the weighing of the drums in question.

It is Mr. Mogerley's testimony that he gave Inspector Green a duplicate copy of the notice of intent. The inspector was unable to recall having received it, but whatever the fact was, it is clear that he did not make any notations thereon, but put his notations as to the weights of the drums in his dock book. The record shows that the duplicate copies of the notices of intent were mailed by Mr. Mogerley to the freight station of the New York Central Railroad in Jersey City where the drums were to be laden on a railroad car and shipped to Canada.

It seems clear from his testimony that Inspector Green did not understand that he was being requested to assume the duties of lading inspector, and that he had no intention of assuming such duties, his sole connection with the matter being compliance with the request that he weigh the drums.

According to the facts shown by the record, the 20 drums in question were loaded without sealing with customs seals, and without customs inspection and supervision, at the premises of the Harbor Tank Storage Co. some time between 2:00 and 3:00 p. m. on March 29, 1940, on a truck operated by the M. & M. Hauling & Distributing Co., which, it appears, was hired by the New York Central Railroad Co. to perform a pick-up and delivery service, and which operated under a customhouse permit. The driver of the truck signed the bill of lading on behalf of the carrier.

If it be considered, as stated in the notice of intent, and as seems to be primarily claimed by the plaintiff, that the Harbor Tank Storage Co.'s plant was the place of deposit for inspection and lading, the original of the notice of intent was filed in the collector's office less than 6 hours before lading of the merchandise, and hence was untimely and not in compliance with article 1044, *supra*.

Plaintiff relies, however, upon the saving clauses found in articles 1054 to 1056 of the Customs Regulations of 1937, the gist of which, as applied to the case at bar, is that failure to file a timely notice of intent with the collector will not bar the payment of drawback provided a notice was delivered to the inspecting officer as required by article 1044, and that no other act or omission on the part of the shipper, the carrier, or the agent of either caused the failure to secure inspection.

Plaintiff's view of the situation is expressed in the brief filed in its behalf as follows:

Since the notice of intent was in Customs Inspector Green's possession before he weighed the merchandise, and he knew that the merchandise was being weighed with benefit of drawback, it is no longer material that the merchandise might have been laden at the Guttenberg, N. J. plant before the expiration of the six hours after the notice of intent was filed in the office of the collector. In other words, the actual notice to Customs Inspector Green dispensed with the six hours requirement. Prior to the time he weighed the merchandise he was in possession of all the information necessary to the weighing, inspecting and lading of the mer-

chandise in accordance with the regulations governing such cases. His failure to comply with the necessary regulations is a matter for which he and the Government must accept full responsibility, not plaintiff.

It is well settled that the drawback provisions of the tariff act are a grant of privilege (*Swan & Finch Co.* v. *United States*, 190. U. S. 143, 47 L. Ed. 984); that article 1044, here involved, with respect to notice of intent to export, is a reasonable regulation of the Secretary of the Treasury made under the specific authority granted in the drawback law, and is mandatory in character, and that compliance therewith is a prerequisite to securing drawback claimed on the exportation of the merchandise involved (*United States* v. *Ricard-Brewster Oil Co.*, 29 C. C. P. A. 192, C. A. D. 191).

We think it also follows that orderly procedure is contemplated by both the statute and regulations. Article 1044 makes the person who is to receive the duplicate copy of the notice of intent the "customs officer in charge at the place of lading." That person is one who is sent to or stationed at the place of lading for the purpose of performing the duties attendant upon lading of goods exported with benefit of drawback. In article 1053 (*b*) of the regulations it is provided:

Whenever practicable, merchandise subject to sampling, weighing, gauging, or measuring shall be sampled, weighed, gauged, or measured at the place of deposit for lading after the goods have been placed in the custody of the exporting carrier. Inspection, sampling, weighing, gauging, and measuring will not be made at a place other than stations, yards, piers, and other regular places of lading where customs officers are stationed for the purpose, except where it is shown to the satisfaction of the collector that such inspection, etc., at such regular place of lading is physically impracticable, and then only upon the condition that the applicant pay the expenses of inspection, etc.

Inspector Green happened to be at the place of lading in connection with another matter. He had no instructions from his superior officer to do anything in connection with the shipment in question, and we will not undertake to say what might have been the result had he assumed the duties of lading inspector without instructions. It is sufficient that he did not assume those duties, and, indeed, it does not appear that he was asked to do so. So far as the record shows, he was not asked to "secure by customs seals" as specified on the notice of intent, nor was he asked to inspect or supervise the lading of the drums on the truck. From his testimony and article 1053 (*b*), *supra*, it would appear that assignment as lading inspector is a specific assignment which was not included in his detail at the time in question, and we do not think the responsibility for the failure to secure customs inspection and supervision of the lading can be placed upon him or upon the Government.

If, as has been said, the Harbor Tank Storage Co.'s plant was the place of deposit for inspection and lading, plaintiff has failed to establish compliance with the applicable regulations requiring that a timely notice of intent to export be filed with the collector, or that a copy of

the notice of intent be delivered to the customs officer in charge at that place, and its claim for drawback cannot be sustained.

It is alternatively contended by the plaintiff, and is also urged by the Government, that the New York Central Railroad's freight station in Jersey City was the place of lading and not the Harbor Tank Storage Co.'s plant in Guttenberg. It appears from the evidence that the drums arrived there about 5 o'clock on March 29, 1940, and were laden on board freight car MC81117 shortly thereafter. There was no customs inspection or supervision of the lading at that point for the reason that the inspector regularly stationed there did not receive the duplicate copy of the notice of intent until the next day.

If that point be considered as the place of deposit for inspection and lading, it would appear that the notice of intent filed with the collector at 10:29 a. m. on March 29, 1940, was timely. However, in these circumstances the notice of intent would be defective since it specified the Harbor Tank Storage Co.'s plant as the place of deposit, and would not be a compliance with the requirement of article 1044 that the place of lading be named in the notice. *Paper Service Co*. v. *United States*, 10 Cust. Ct. 173, C. D. 747.

On the record presented we have no other course than to overrule the protest.