# SWAN AND FINCH COMPANY *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 258.   Argued April 22, 23, 1903.—Decided May 18, 1903.

The placing on board vessels in the United States and bound for foreign ports of lubricating oils manufactured from imported rape seed on which duty has been paid and which oils are for use in, and to be consumed by the vessels is not such an exportation of the oils as entitles the sellers to drawbacks under § 22 of the act of August 28, 1894, reënacted as § 30 of the act of July 27, 1897.

This has been the uniform construction of the department charged with the execution of the statute.

Where the burden is placed upon the citizen, if there be a doubt it must be resolved in favor of the citizen; but as the right to drawbacks is a privilege granted by the government any doubt as to the construction of the statute must be resolved in favor of the government.

SECTION 22, of the act of August 28, 1894, 28 Stat. 509, 551, reënacted as section 30 of the act of July 27, 1897, 30 Stat. 211, is as follows:

" SEC. 22. That where imported materials on which duties have been paid are used in the manufacture of articles manufactured or produced in the United States, there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such dutie : *Provided,* That when the articles exported are made in part from domestic materials the imported materials, or the parts of the articles made from such materials, shall so appear in the completed articles that the quantity or measure thereof may be ascertained : *And provided further,* That the drawback on any article allowed under existing law shall be continued at the rate herein provided. That the imported materials used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all cases where drawback of duties paid on such materials is claimed, be identified, the quantity of such materials used and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in

the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, to the agent of either or to the person to whom such manufacturer, producer, exporter, or agent shall in writing order such drawback paid, under such regulations as the Secretary of the Treasury shall prescribe."

During the years 1895, 1896, 1897, the appellant, a corporation engaged in business as importer, manufacturer and exporter of oils at New York city and elsewhere in the United States, having used in the manufacture of certain kinds of lubricating oils imported rape seed oil on which duties had been paid, placed on board of vessels bound for foreign ports, lubricating oils so manufactured, and claimed a drawback of the duties paid on the imported rape seed oil used therein. The Treasury Department allowed and paid the drawback on such manufactured oils as were shipped to foreign countries and there landed, but refused to pay any on such as were placed on board for use and consumed in use on the vessels. The appellant brought this suit in the Court of Claims to recover the drawbacks on the last named oils. That court decided against it, 37 C. Cl. 101, and from such decision this appeal was taken.

*Mr. William B. King* for appellant. *Mr. George A. King* was on the brief.

*Mr. Assistant Attorney General Pradt* for appellee.

Mr. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The statute allows the drawback " on the exportation," and the question is whether goods placed on board a vessel bound for a foreign port, to be used and consumed on board the vessel during its voyage, and in fact so used and consumed, are exported.

The careful opinion of the Court of Claims, which in general we approve and to which we refer, relieves us from the necessity of an extended discussion. Whatever primary meaning may

be indicated by its derivation, the word "export" as used in the Constitution and laws of the United States, generally means the transportation of goods from this to a foreign country. "As the legal notion of emigrating is a going abroad with an intention of not returning, so that of exportation is a severance of goods from the mass of things belonging to this country with an intention of uniting them to the mass of things belonging to some foreign country or other." 17 Op. Attys. Gen. 583.

True, the context may sometimes give to the word a narrower meaning, and in the execution of the administrative affairs of government it may have been applied to cases in which there was not in the full sense of the term an exportation, yet these are exceptions and do not destroy its general signification. It cannot mean simply a carrying out of the country, for no one would speak of goods shipped by water from San Francisco to San Diego as "exported," although in the voyage they are carried out of the country. Nor would the mere fact that there was no purpose of return justify the use of the word "export." Coal placed on a steamer in San Francisco to be consumed in propelling that steamer to San Diego would never be so designated. Another country or State as the intended destination of the goods is essential to the idea of exportation.

Counsel for appellant, after quoting from several dictionaries, say :

"These definitions show that the word has two meanings:

"(1) Its primary, general or essential meaning—to carry or send out of a place ; and

"(2) Its secondary, specific or especial meaning—to send out from one country to another.

"Of all goods sent out of this country but a small proportion fails to reach a foreign country ; the amount consumed or lost at sea is minute in comparison. In ordinary use, therefore, the foreign destination is implied. We claim that, however usual, it is not essential, and that here the original and primary definition of the word should be applied to goods carried out of the country on vessels in the foreign trade, although they never reach a foreign country."

To this we are unable to yield our assent:

First. The fact that the words " export " and " exportation " are, as we have indicated, generally used in the sense of transportation from this to a foreign country, makes against the contention that it is here used in a different sense.

Second. The purpose with which the drawback statute was enacted is against it. In *Campbell* v. *United States*, 107 U. S. 407, 413, we said :

" The purpose of the drawback provision is to make duty free, imports which are manufactured here and then returned whence they came or to some other foreign country—articles which are not sold or consumed in the United States."

So also in *Tide Water Oil Company* v. *United States*, 171 U. S. 210, 216 :

" The object of the section was evidently not only to build up an export trade, but to encourage manufactures in this country, where such manufactures are intended for exportation, by granting a rebate of duties upon the raw or prepared materials imported, and thus enabling the manufacturer to compete in foreign markets with the same articles manufactured in other countries."

Third. The uniform construction placed by the department charged with the execution of the statute has been against it.

Fourth. Being a governmental grant of a privilege or benefit it is to be construed in favor of the government and against the party claiming the grant. Where the burden is placed upon a citizen, if there be a doubt as to the extent of the burden it is resolved in favor of the citizen, but where a privilege is granted any doubt is resolved in favor of the government. In *Hartranft* v. *Wiegmann*, 121 U. S. 609, 616, the one rule was thus stated :

" We are of opinion that the decision of the Circuit Court was correct. But, if the question were one of doubt, the doubt would be resolved in favor of the importer, ' as duties are never imposed on the citizen upon vague or doubtful interpretations." *Powers* v. *Barney*, 5 Blatch. 202 ; *United States* v. *Isham*, 17 Wall. 496, 504 ; *Gurr* v. *Scudds*, 11 Exch. 190, 191 ; *Adams* v. *Bancroft*, 3 Sumner, 384. See also *American Net & Twine Company* v. *Worthington*, 141 U. S. 468, 474.

On the other hand, in *Hannibal &c. Railroad Company* v. *Packet Company*, 125 U. S. 260, 271, we said, citing several authorities :

" But if there be any doubt as to the proper construction of this statute, . . . then that construction must be adopted which is most advantageous to the interests of the government. The statute being a grant of a privilege, must be construed most strongly in favor of the grantor."

For these reasons we think the judgment of the Court of Claims was correct, and it is

*Affirmed.*

MR. JUSTICE BROWN and MR. JUSTICE PECKHAM dissented.