(C. D. 554)

Todd Shipyards Corp. *v.* United States

United States Customs Court, Third Division

(Decided November 17, 1941)

*Nicholas J. Healy, 3rd (William H. Lane* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue,* special attorney), for the defendant.

Before Cline and Keefe, Judges

Keefe, Judge: This is an action to recover duties exacted by the collector at New York upon certain armatures imported from England. Duty was levied thereon at the appropriate rate under the provisions of the Tariff Act of 1930. The plaintiff contends that the armatures were a part of the equipment of the motor vessel *Salamaua* which had been removed from the vessel and left in England for repair; that the repairs thereto were not completed at the time the vessel was scheduled to sail and subsequently were brought to the United States upon the *Queen Mary* for installation upon the *Salamaua* as a necessary part thereof. Consequently said armatures are entitled to exemption from all duty under the provisions of section 446 of the Tariff Act of 1930.

At the trial it was agreed between counsel that the facts stated in the memorandum of the collector are the facts in the case. The collector's memorandum attached to the papers before the court was incorporated as a part of the record herein. The facts as stated by the collector therein appear as follows:

The entry covers two cases of armatures. These articles had been removed from the M/V "Salamaua" while that vessel was being overhauled abroad. They were imported on the SS "Queen Mary", entered, and released for consumption, and were subsequently transferred for reinstallation on the M/V "Salamaua" at this port.

Section 446 of the act of 1930, pertaining to supplies and stores of vessels retained on board, provides as follows:

Vessels arriving in the United States from foreign ports may retain on board, without the payment of duty, all coal and other fuel supplies, ships' stores, sea

stores, and the legitimate equipment of such vessels. Any such supplies, ships' stores, sea stores, or equipment landed and delivered from such vessels shall be considered and treated as imported merchandise: *Provided*, That bunker coal, bunker oil, ships' stores, sea stores, or the legitimate equipment of vessels belonging to regular lines plying between foreign ports and the United States, which are delayed in port for any cause, may be transferred under a permit by the collector and under customs supervision from the vessel so delayed to another vessel of the same line and owner, and engaged in the foreign trade, without the payment of duty thereon.

Counsel for the plaintiff contends that necessity dictated that the owners of the *Salamaua* transport the armatures from Great Britain upon the *Queen Mary* for reinstallation upon the vessel in the United States if the *Salamaua* was to be kept in service; that the *Salamaua* was in a United States port only temporarily and departed soon after the armatures were installed, and the armatures so installed were not within the meaning of a customs importation because there was no intention at any time to allow said armatures to become a part of goods generally entering the commerce of the United States.

The Government contends that any merchandise brought within a port of entry with the intention to unlade is subject to duty unless exempted therefrom by some provision of law, and inasmuch as Congress has failed to specially exempt merchandise imported under conditions such as are before us in this case, it therefore becomes imported merchandise subject to the duty provided therefor in the tariff act.

It has been consistently held by the courts that every commodity having a value which is brought within the limits of the United States constitutes imported merchandise within the meaning of the customs laws and is subject to the assessment of duty unless specifically exempted therefrom. See *Moral* v. *United States*, T. D. 29260, G. A. 6805; and *Texas Transport & Terminal Co. (Inc.)* v. *United States*, T. D. 45897.

In the case of *Knutsen* v. *United States*, T. D. 43960, certain machinery imported at New York in bond for immediate transportation to Los Angeles, where it was entered for exportation and installed in a foreign vessel which subsequently departed for a foreign port, was held subject to duty inasmuch as the importer was unable to submit proof that the machinery had been landed in a foreign port. The court there stated that:

In the present state of the tariff law it is intended that no goods shall be brought into the United States without payment of duty except under two conditions: (1) That they shall be specifically exempted in the law from paying duty; and (2) that they may be imported under bond for exportation, in which case if not exported duty is assessed thereon according to the terms of the statute. * * *

In order that merchandise may be considered as exported, another country or state as the intended destination of goods is essential to the

idea of exportation (See *Swan & Finch Co.* v. *United States*, 190 U. S. 143), and proof of exportation is satisfied upon the presentation of a certificate of landing in a foreign country. See *Ash* v. *United States*, 1 Cust. Ct. 247, C. D. 57.

In *Page & Jones* v. *United States*, 26 C. C. P. A. 124, C. A. D. 5, a vessel of British registry became disabled on the high seas while en route to Mexico and was towed to Mobile, Ala. Certain parts were sent to England for repair before the vessel could proceed upon its journey. They were removed from the vessel, a transportation entry was made, and the parts were shipped to England. Upon the return thereof entry for consumption was made and duty was paid upon their value, although they did not enter the commerce of the country and were installed immediately in their former position in the vessel. The appellate court held that the dismantling of the machinery in the first instance and its transshipment from the vessel in which it was installed to another vessel under customs custody constituted an importation because the machinery was brought within the limits of the port of entry from a foreign country with intent to unlade. Thus it became imported merchandise, although not having been entered for consumption at that time no duty was assessable. However, after the repairs were made, and the goods were returned to the United States, it was held to have the same status as any other imported merchandise and properly assessable with duty.

The merchandise in question here was imported into the United States upon the S. S. *Queen Mary* for installation in this country upon the motor vessel *Salamaua*, which subsequently sailed from the United States. Clearly the situation presented herein does not bring the merchandise within any exemption provided for in section 446, *supra*, because it is there specifically provided that any equipment landed and delivered from a vessel from a foreign port shall be considered and treated as imported merchandise unless such vessel of importation is delayed in port, in which case such equipment may be transferred under customs supervision to another vessel of the same line without the payment of duty. The transfer of the armatures in question was not occasioned through the delay of the *Queen Mary* in port, and therefore the armatures are not within the exemption granted.

Inasmuch as section 446 is the only grant made by Congress for an exemption of duty upon the equipment of a vessel transferred in a United States port from one vessel to another of the same line, and the armatures in question were brought within the limits of the United States with the intention to unlade, we are constrained to hold that they were properly assessable with duty by the collector.

Judgment will therefore be entered in favor of the defendant.