(C. D. 837)

GULF OIL CORPORATION v. UNITED STATES

United States Customs Court, First Division

(Decided March 24, 1944)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

WALKER, Judge: This case has been submitted for decision upon a stipulation of counsel, which, so far as material, reads as follows:

It is stipulated and agreed, by and between the attorneys for the respective parties hereto, subject to the approval of the court:

That on August 8, 1940, the documentation of the vessel S. S. *Gulfpenn* and on August 2, 1940, the documentation of the vessel S. S. *Solana,* which vessels formerly had been registered as being engaged in foreign trade, were changed to enrollment for the purpose of engaging in coastwise trade.

That on said dates of changing registration, the official records of the customs officials at Philadelphia, Pa., reveal that there were on board the S. S. *Gulfpenn* 465 barrels of bunker fuel oil, and on board the S. S. *Solana,* 1,300 barrels of bunker fuel oil.

That the same records indicate that the said 465 barrels of bunker fuel oil was the quantity of oil remaining from 4,356.01 barrels which had been laden on the S. S. *Gulfpenn* on July 20, 1940, and that the said 1,300 barrels of bunker fuel oil was the quantity of oil remaining from 3,270.76 barrels which had been laden on the S. S. *Solana* on July 16, 1940.

That the same records indicate that said 4,356.01 barrels of bunker fuel oil as placed upon the S. S. *Gulfpenn,* and that said 3,270.76 barrels of bunker fuel oil as placed upon the S. S. *Solana,* were laden and exported upon said vessels as ship's supplies.

That the same records indicate that the S. S. *Gulfpenn* sailed on July 23, 1940, from Philadelphia, Pa., with Venezuela as its ultimate destination, and that the S. S. *Solana* sailed from Philadelphia, Pa., on July 17, 1940, with Venezuela as its ultimate destination, and that both of these vessels when sailing to Venezuela were engaged in foreign trade, and that both of these vessels arrived at Venezuela as their point of destination.

That the same records indicate that the said bunker fuel oil had been so laden on the said vessels under notices of intent to export with benefit of drawback Nos. 1638 (S. S. *Gulfpenn*) and 1333 (S. S. *Solana*), for the stated reason that the

said oil had been manufactured from imported crude petroleum on which duty had been assessed and paid, and for the manufactured products of which an approval of drawback had been obtained, and a drawback rate established in T. D. 46030–N.

That the same records indicate that after said 4,356.01 barrels of said bunker fuel oil were laden upon the S. S. *Gulfpenn*, and that after said 3,270.76 barrels of said bunker fuel oil were laden upon the S. S. *Solana*, said oil was not subsequently landed at any United States port.

That the same records indicate that the plaintiff has filed claims for drawback of duties paid on the imported crude petroleum covering all the foregoing bunker fuel oil, and that drawback has been allowed on all such oil, with the exception of the said 465 barrels and 1,300 barrels remaining on the said vessels on the date of their respective changes of documentation.

That the reason why no drawback was allowed on such oil was because it had been used as ship's supplies on vessels engaged in coastwise trade, and was not considered by the customs officials to be entitled to the drawback benefits provided in the statutes and regulations covering ship's supplies.

That the same records indicate that all of the drawback regulations with reference to the 4,356.01 barrels of bunker fuel oil laden aboard the S. S. *Gulfpenn* and the 3,270.76 barrels of bunker fuel oil laden aboard the S. S. *Solana* were complied with.

Although not stated in the stipulation, it appears from the official papers that the imported crude petroleum from which the fuel oil in question had been manufactured in the United States had paid a tax or duty at the rate of ¼ of 1 cent per gallon under the provisions of sections 3420 and 3422 of the Internal Revenue Code (53 Stat. L., Pt. 1) as modified by the trade agreement with the Republic of Venezuela, reported in T. D. 50015.

Counsel for both parties have cited and quoted section 309 of the Tariff Act of 1930 as being applicable to the situation involved. However, we note that section 3451 of the Internal Revenue Code appears to be particularly applicable to articles manufactured or produced in the United States with the use of imported materials which have paid tax or duty under the Internal Revenue Code. So far as pertinent, it reads as follows:

SEC. 3451. EXEMPTION FROM TAX OF CERTAIN SUPPLIES FOR VESSELS.

Under regulations prescribed by the Commissioner, with the approval of the Secretary, no tax under this chapter shall be imposed upon any article sold for use as fuel supplies * * * on * * * vessels * * * actually engaged in foreign trade * * * . Articles manufactured or produced with the use of articles upon the importation of which tax has been paid under this chapter, if laden for use as supplies on such vessels, shall be held to be exported for the purposes of section 3430.

 *  * *  *  *  *  *  *

Section 3430, referred to above, so far as pertinent, reads as follows:

SEC. 3430. APPLICABILITY OF TARIFF PROVISIONS.

The tax imposed by section 3420 shall be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930, 46 Stat. 590, 672

(U. S. C., Title 19, ch. 4) and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such Act, except that—

\* \* \* \* \* \* \*

(c) no drawback of such tax (except tax paid upon the importation of an article described in sections 3422 \* \* \*) shall be allowed under section 313 (a) \* \* \* of the Tariff Act of 1930 or any provision of law allowing a drawback of customs duties on articles manufactured or produced with the use of duty-paid materials;

\* \* \* \* \* \* \*

Section 313 (a) of the Tariff Act of 1930, referred to in section 3430, *supra*, so far as material, reads as follows:

SEC. 313. DRAWBACK AND REFUNDS. .

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, \* \* \*.

The record in the case at bar, we think, makes out a clear case in favor of the claim of the plaintiff herein under the foregoing statutory provisions. There is no question but that at the time the ships in question took aboard the fuel oil they were "Vessels \* \* \* actually engaged in foreign trade." Section 3451, *supra*, provides that if such articles are "laden for use as supplies on such vessels" they "shall be held to be exported for the purposes of section 3430," which latter section, although couched in language in the negative, by the exception thereto in parentheses, and when read with section 3451, *supra*, manifests the intent of Congress that the drawback provisions of section 313 shall be applicable to such articles.

On its face, section 3451 purports to substitute the act of lading for the act of exportation required in section 313. Whether the mere act of lading the supplies, coupled with a compliance with the applicable customs regulations, is sufficient to confer the right to recover drawback, it is not necessary here to decide, for it appears that after lading the ships actually cleared for voyages in foreign trade. In our view, therefore, the right to recover drawback under the facts set forth in the stipulation became absolute, and the collector's refusal to allow it was erroneous.

The sections of the law providing for the exportation of merchandise with benefit of drawback are a governmental grant of privilege (*Swan & Finch Co.* v. *United States*, 190 U. S. 143, 47 L., Ed. 984), but upon compliance with the terms under which the privilege is extended, as embodied in the applicable statutes and regulations, a right to recover arises.

In the brief filed on behalf of the Government it is said:

It is the Government's contention that the return of the vessels to the port of Philadelphia with a part of the original fuel oil remaining on board, and the change of registration of the vessels from foreign trade to coastwise trade, alter

the status of the fuel oil remaining on board from that which is entitled to draw-back to that which is not entitled to the same.

This argument, of course, is based upon the premise that the right to recover drawback arises only if the fuel supplies involved are actually *used* on a vessel engaged in foreign trade. The statute (section 3451, *supra*) makes no such requirement; it makes the lading of such articles as supplies the equivalent of exportation, and the general drawback statute (section 313 (a), and subsections (h) and (i)) covers the other incidents of the right to recover.

Provision is made in paragraph 1615 of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938 (T. D. 49646), and in section 309 (c) of the tariff act as so amended, for the imposition of duties upon the reimportation of articles exported with benefit of drawback, but it is clear that the collector did not treat the fuel oil in question as a reimportation, and we are not here called upon to pass on the question of whether the change from the foreign to the coasting trade affected the status of the fuel oil remaining on board the vessels involved so as to render it dutiable *as an importation*.

The case of *Gulf Refining Co.* v. *United States*, T. D. 48399, 69 Treas. Dec. 1101, is cited in Government's brief in support of the proposition that in order to be entitled to the benefit of the drawback provisions fuel supplies must be actually used while the vessel is engaged in foreign trade. We think there is a vital difference between the facts in the case at bar and those in the *Gulf Refining Co.* case. In that case, at the time the fuel supplies were laden, the vessels involved were not "actually engaged in foreign trade"; they were engaged in pleasure cruises during which they did not clear for or touch at any foreign or domestic port. The facts, therefore, did not meet the requirement of the statute that the supplies be laden on vessels actually engaged in foreign trade in order to secure the benefit of the privilege. We therefore do not consider the *Gulf Refining Co.* case as an authority on the question presented here.

The sole question before us is whether the collector's action in disallowing drawback was correct, and we hold that it was not correct and that upon the record presented the plaintiff was entitled to recover the drawback disallowed.

Judgment will issue accordingly.