The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* GULF OIL CORPORATION (No. 4482) [1]

[1] C. A. D. 297.

United States Court of Customs and Patent Appeals, January 4, 1945

*Paul P. Rao*, Assistant Attorney General (*Sybil Phillips* and *Richard F. Weeks* of counsel), for the United States.

*Tompkins & Tompkins* (*Edward P. Sharretts* of counsel) for appellee.

[Oral argument December 5, 1944, by Mr. Weeks and Mr. Sharretts]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court sustaining a protest against the refusal of the Collector of Customs at the port of Philadelphia to allow a claim for drawback on a quantity of bunker fuel oil.

The issue involved is one of law, and the question to be determined is based on evidence which includes a stipulation of counsel and establishes the following facts:

In July 1940, certain bunker fuel oil, produced and manufactured in the United States with the use of imported crude petroleum, duty upon the merchandise so used having been paid by appellee, was laden aboard two vessels; 4,356.01 barrels thereof on the S. S. *Gulfpenn* and 3,270.76 barrels on the S. S. *Solana*, for their respective use as fuel supplies.

Both vessels at the time were actually engaged in foreign trade, and after being laden with the supply of oil, each made a round-trip voyage to Venezuela, a country having a reciprocal trade agreement with the United States.

Upon returning to the United States, 465 barrels of the oil originally supplied by appellee remained unused aboard the S. S. *Gulfpenn* and 1,300 barrels aboard the S. S. *Solana*. The vessels then changed documentation from register to enrollment and engaged in coastwise trade.

Appellee filed claims for drawback of duties on the oil originally laden aboard the vessels and drawback was allowed on such oil, with the exception of the unused quantity remaining aboard the respective vessels on the date of change of their documentation.

The parties hereto have stipulated that all drawback regulations

with reference to the oil were complied with, and that no part of the oil was subsequently landed at any port of the United States.

The Collector of Customs refused to allow appellee's claim for drawback on the unused portion of oil which remained aboard the respective vessels when the change of documentation was made, for the reason that such oil had been used as supplies on vessels engaged in coastwise trade. The validity of his action is presented for review on this appeal.

Whether appellee, upon the facts presented, is entitled to drawback on the entire quantity of bunker oil originally laden, or to drawback only on that portion which was actually consumed in foreign trade, depends upon the legal interpretation of the declaration, "Articles * * * of domestic manufacture or production, laden as supplies upon any * * * foreign vessel or any such vessel * * * of the United States [vessels designated in section 309 (a), Tariff Act of 1930, as amended] * * * shall be considered to be exported within the meaning of the drawback provision of this Act," as amended in section 309 (b) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

Appellant contends that the act of exportation is not completed or effected within the meaning of the law unless the goods in question are utilized in the course of foreign trade.

Section 446 of the Tariff Act of 1930 provides that vessels arriving in the United States from foreign ports may retain their fuel supplies on board without the payment of tax.

It further provides that any of the above-named supplies landed and delivered in the United States from such vessels shall be considered and treated as imported merchandise. In other words, fuel oil so landed and delivered is made dutiable, and the owner thereof, whoever he may be, is made subject to the assessment and payment of an import tax.

Section 446 also contains a provision to the effect that any bunker oil of vessels belonging to regular lines plying between foreign ports and the United States, which are delayed in port for any cause, may be transferred under a permit by the Collector of Customs and under customs supervision from the vessel so delayed to another vessel of the same line and owner, and engaged in the foreign trade, without the payment of duty.

There is no evidence in the case at bar to indicate that the vessels named herein were of the same regular line and ownership. Had these facts been established, either of the vessels, delayed in port for any cause, was authorized under the statute to transfer its bunker oil, without payment of duty, to the other, had the latter continued to engage in foreign trade.

It has been held that a vessel engaged in foreign trade after changing

from register to enrollment may proceed from port to port in the coastwise trade of the United States, for the purpose of picking up foreign-bound cargo, without losing its identity or right to tax-free oil as a vessel engaged in foreign trade. *Standard Oil Co. of Louisiana* v. *United States*, 3 Cust. Ct. 39, C. D. 199.

In the recent case of *Atlas Marine Supply Co.* v. *United States*, 29 C. C. P. A. (Customs) 20, C. A. D. 165, metal drums, and oil contained therein, of foreign manufacture were held to be free of duty as ships' supplies, and what became of such supplies after being laden was held to be immaterial, it being established that the supplies in question were not thereafter landed.

The definite purpose of Congress to make drawback effective at the time the supplies are laden is indicated by its enactment of legislation designed to protect the Government against loss of revenue by imposing an import tax to be paid or repaid by the owner of exported supplies in the event the exported supplies are subsequently landed in the United States (sec. 309 (c), Tariff Act of 1930, as amended).

Such purpose of Congress is further indicated by its enactment of remedial legislation following a court decision to the effect that the act of exportation was not completed and drawback was not effective until the laden supplies had reached their ultimate destination. *Swan and Finch Co.* v. *United States*, 190 U. S. 143. Congress then expressly provided that articles or products of domestic manufacture laden as supplies upon vessels actually engaged in foreign trade "shall be considered to be exported within the meaning of the drawback provisions of this Act" (sec. 309 (b), Tariff Act of 1930, as amended).

The clear intent of the legislation enacted by Congress relative to the exportation of products of domestic manufacture to be used as supplies on vessels engaged in foreign trade is to place American manufacturers upon an equal footing with foreign competitors and to provide profitable employment for American labor and capital.

Vessels employed in the fisheries or in the whaling business, or actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States and any of its possessions are designated as beneficiaries of the legislation enacted, for the reason that such vessels in their regular course of business are in position to obtain fuel supplies free of tax in foreign ports. Without this legislation, owners of such vessels would load their fuel supplies free of tax in foreign ports, thereby depriving this country of revenue and of its competitive market for the product. See Section 309 (a), *supra;* also Senate Report No. 58, Seventy-third Congress, First Session, May 1, 1933, to accompany H. R. 5040.

We have considered the cases cited by appellant and find among them no authority in conflict with the views expressed herein.

"For the reasons stated, the judgment of the Customs Court is *affirmed*.

JACKSON, J., dissents.