(C. D. 1087)

GEO. WM. RUEFF, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 26, 1948)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett* and *Richard H. Welsh*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: In this case the collector of customs made a second reliquidation of an entry involving a quantity of Bacardi rum in which he assessed duty at the rate of $5 per proof gallon under paragraph 802 of the Tariff Act of 1930, without granting the 20 per centum reduction under the Cuban Trade Agreement (T. D. 47232). Plaintiff claims that the commodity is properly dutiable at $2.50 per proof gallon or $2 per proof gallon under the same paragraph, by virtue of the Cuban Trade Agreement, *supra*, and the Trade Agreement with Haiti (T. D. 47667). By amendment to the protest it is claimed that the re-reliquidation is void upon the ground that the collector had no probable cause to believe there was fraud in the case and on the further ground that said re-reliquidation was untimely. As to the origin of this rum, the following stipulation was entered into by counsel:

It is hereby stipulated between counsel that the merchandise in question in this case consists of 100 barrels of Bacardi rum, each barrel containing 10 demijohns (bottles) each demijohn (bottle) containing one gallon or less, and that said rum was manufactured or produced in the Republic of Cuba.

Said rum was part of a lot of 1501 barrels which was exported from Cuba to Bermuda, and on February 26, 1934 exported from Hamilton, Bermuda, to the United States and arrived at New York on the SS *Monarch of Bermuda* on February 28, 1934, where it was entered under warehouse bond No. 57218 on the same date.

Said 100 barrels of rum were then withdrawn from warehouse at New York on export withdrawal 18050 for exportation to Cuba and shipped back to Cuba on the SS *Oriente*. sailing on November 17, 1934.

Said 100 barrels of rum were then brought back from Cuba direct to the United States on the SS *Sixaola* and entered at New Orleans on December 3, 1934, under entry No. 1348, which is the entry involved in this case.

It appears from the official papers in evidence that the collector originally liquidated this entry as dutiable at the rate of $5 per proof gallon under said paragraph 802, with a reduction of 20 per centum, as a product of Cuba. This assessment apparently was based upon the collector's decision that the demijohns which were used as containers of the rum were not bottles under the terms of the paragraph as modified. Upon a protest filed against this liquidation the collector reliquidated at the rate of $2.50 per proof gallon, evidently upon a finding that the demijohns were bottles within the meaning of the paragraph as modified.

Just prior to.the expiration of the 2-year period within which the statute (section 521 of the Tariff Act of 1930) permits reliquidation of an entry, the collector re-reliquidated at the $5 rate. This re-reliquidation was made in accordance with a communication received

from the Bureau of Customs and was taken on the last day of said 2-year period. We quote said section 521 as follows:

SEC. 521. RELIQUIDATION ON ACCOUNT OF FRAUD.

If the collector finds probable cause to believe there is fraud in the case, he may reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or the last reliquidation.

It is plaintiff's contention that upon the record the collector did not have probable cause to believe that there was fraud in the case.

It is admitted on the part of the Government that the burden of proving "probable cause to believe there is fraud in the case" rests upon it. There was offered and received in evidence as exhibit A, on the part of the Government, a letter from the Commissioner of Customs, advising the New Orleans collector of the history of this importation. The Government called as a witness the assistant collector of customs at the port of New Orleans whose testimony was to the effect that he received the Commissioner of Customs' letter on the day before the 2-year period expired and, after consultation with the chief liquidator at that port, decided that there was probable cause to believe there was fraud in the case. He thereupon re-reliquidated the entry.

There was also offered and received in evidence by the judge who heard the case on circuit a second document, being a report from the customs agent in charge at New Orleans to the Commissioner of Customs, which report was dated 13 days prior to the date of the letter from the Commissioner to the collector. This report was received in evidence over objection by counsel for the plaintiff and marked "Exhibit B." The evidence showed that said exhibit B was not before the collector or assistant collector at the time of this re-reliquidation. It therefore could have no bearing upon the question of "probable cause" in this case. It apparently was received on the theory that it was part of the *res gestae*. The assistant collector testified that he did not have this report at the time he made his re-reliquidation and that said re-reliquidation was based solely upon the Commissioner's letter (exhibit A). The report was not, therefore, contemporaneous with the collector's finding nor was it connected therewith, nor can it be construed as an incident of the event under consideration. We therefore hold that exhibit B is of no probative value in a case of this character where the point at issue is the state of mind of the collector at the time he made his re-reliquidation. A report of which he had no knowledge at that time could have no bearing on his finding of "probable cause," nor is it a part of the *res gestae*.

We must then consider whether the collector was justified in finding as he did, such decision being based solely upon the letter of the Commissioner (exhibit A). Said letter is in the following language:

The Bureau is in receipt of a report from the customs agent in charge at your port dated May 4, 1937, File 6/1008, concerning the dutiability of certain Bacardi rum entered at your port under warehouse entries 1348 and 1501, dated December 3, 1934, and January 2, 1935, respectively, for the account of Paul Gelpi and Sons, Incorporated.

In the Bureau's letter of April 11, 1934, addressed to the collector of customs at New York, this office stated that it was understood that the rum was produced in Cuba and shipped therefrom to Bermuda and subsequently forwarded to the United States, but the rum was denied release as set forth in that letter. It appeared that it was intended to ship the rum back to Cuba and again bring it to this country and claim the preferential reduction applicable to Cuban products.

The Bureau stated that any shipment of the rum from this country would be for the sole purpose of obtaining a tariff benefit on return to the United States and such shipment would not be a bona fide exportation and that on return to this country after shipment abroad under such circumstances, the merchandise would be subject to duty in accordance with its condition at the time of original importation and at the rate in effect at the time release could have been effected from customs custody had there been no outward shipment.

It is noted from the report of the supervising customs agent at New York, dated April 24, 1937, that the 100 barrel lot was shipped from New York to Havana, Cuba, on the steamship ORIENTE on November 17, 1934, and the 500 barrel lot on the steamship PETEN on December 13, 1934, consigned to the West Indies Distilleries, Incorporated, and that the 100 barrel lot arrived in New Orleans just fifteen days and the 500 barrel lot only twenty days after leaving New York. It appears also from the information obtained from the former president of Paul Gelpi and Sons, Incorporated, that while the rum was still in New York negotiations were entered into with this firm for handling the rum in New Orleans and as a result the rum was shipped from New York and received in New Orleans as set forth above.

The Bureau is of the opinion that the foregoing transactions indicate clearly that it was the intention at the time the rum was shipped from New York to again bring it into this country and following the Bureau's letter of April 11, 1934, the shipments from New York were not bona fide exportations. Further, following the principle of T. D. 43658, the rum in question does not appear to be entitled to the preferential reduction in the duty assessment provided for certain products of Cuba since it was not shown to be destined for the United States when shipped to Bermuda from Cuba. Therefore, any of this rum that was released prior to June 3, 1935, the effective date of the Haitian Trade Agreement, is properly subject to the assessment of duty under paragraph 802 of the tariff act at the rate of $5 per proof gallon, and any of the rum released after that date and the portion remaining in warehouse is properly subject to the assessment of duty at $2.50 per proof gallon under paragraph 802 as modified by the Haitian Trade Agreement, if in containers holding each one gallon or less, with no preferential allowance on account of its Cuban origin.

In view of the facts reported, you are hereby authorized to reliquidate the entries in question to conform with the opinion contained in the foregoing paragraph. Your attention is called to the fact that the two year period for reliquidation on account of fraud, under the provisions of section 521 of the tariff act, will expire on May 19 and June 24, 1937, in connection with warehouse entries numbers 1348 and 1501, respectively.

The assistant collector testified that having been informed by the above letter "that investigation had revealed that this rum had come from Bermuda to New York, had been refused entry there, and

been exported, that was sufficient cause for me" to discuss the case with the chief liquidator, "and it was my view that there was sufficient probable cause to reliquidate this entry under section 521. That was the sole basis upon which I acted."

We have analyzed the letter (exhibit A) carefully, that being the only evidence upon which the assistant collector found reason to believe probable cause of fraud existed in the case, bearing in mind that our inquiry is concerned only with the question of whether said official was justified in finding from the contents of that document alone "probable cause" of fraud, not whether fraud was actually present. The letter, while conceding that the rum was of Cuban origin, stated that it was originally shipped from Cuba to Bermuda and thence to the United States, where it was denied release. The reason for such denial does not appear. It further states that "it was intended to ship the rum back to Cuba and again bring it to this country and claim the preferential reduction applicable to Cuban products." The letter contains no information as to the status of the rum while in Bermuda, whether it was shipped by the Cuban producer to Bermuda as the result of a sale, whether it remained in bond in Bermuda, or whether its ownership changed hands there.

It is clear that the circumstances surrounding the first importation of this rum at the port of New York were not disclosed to the collector at New Orleans. As a result of this lack of knowledge, he was deceived as to the character of the importation and accorded it the preferential treatment provided in the Cuban Trade Agreement. The collector presumably was cognizant of the early decision holding that products of Cuba which had been exported to other countries and had become a part of the commerce of other countries, and were then exported to the United States, were not entitled to the benefits of the Cuban Reciprocity Agreement of 1903. See the case of O. G. Hempstead & Son v. United States, T. D. 34125, G. A. 7529. He also presumably had knowledge of the letter of the Secretary of the Treasury, published as T. D. 43658, 56 Treas. Dec. 408, wherein said official instructed the collector of customs at New York that where "Cuban products are sold to foreign countries and the seller has lost title and interest in the products, such products upon being subsequently shipped to the United States would not be entitled to the 20 per cent deduction whether such products had been placed in a bonded warehouse in a foreign country or not."

Bearing in mind the state of the law at the time the instant merchandise was entered at New Orleans, we find that the circumstances surrounding this importation, as set forth in the Commissioner's letter, were sufficient to warrant a finding of "probable cause" of fraud. His re-reliquidation was therefore authorized by the statute (section 521, supra) and was timely.

The statements in the letter of the Commissioner indicate that investigation showed that there was no intent on the part of the shippers of this rum that the same should be sold in Cuba, but their intent was to reimport it into the United States in order to obtain the benefit of a lower rate of duty. It has been held consistently that under such circumstances there has been no *bona fide* exportation of the merchandise and, therefore, there could be no legal importation at New Orleans. *Swan & Finch* v. *United States*, 190 U. S. 143; *American Mica Co.* v. *United States*, T. D. 31143, G. A. 7139; *Randall Co.* v. *United States*, T. D. 37974, G. A. 8250; *Indianapolis Motor Speedway Co.* v. *United States*, T. D. 39343, G. A. 8585; *Eastman Kodak Co.* v. *United States*, T. D. 40309, G. A. 8831; *Van Camp Sea Food Co.* v. *United States*, T. D. 43661; and *Snow* v. *United States*, T. D. 46772. Therefore, this rum would be dutiable as if imported from Bermuda, its status at the time of withdrawal from warehouse in New York, in which case, under authority of the *D. & B. Import Corp.* v. *United States*, 29 C. C. P. A. (Customs) 65, 67, C. A. D. 172, the Cuban preferential rate has no application. That case held that the preferential rate could not be availed of because the rum there involved had entered the commerce of Bermuda after leaving Cuba, thus becoming dutiable as an importation from Bermuda. In arriving at their decision, the court made use of the following language:

\* \* \* For the purposes of this case we find it necessary to observe only that when the rum was shipped from Bermuda to the United States it constituted commerce, not between Cuba and the United States, but between Bermuda and the United States. Cuba had lost all jurisdiction over the rum, and while in bonded warehouse in Bermuda the rum was wholly subject to the jurisdiction of Bermuda, a colony of Great Britain.

\*       \*       \*       \*       \*       \*       \*

Should it be held that articles imported into the United States from any country other than Cuba, which articles are the growth or product of Cuba, are entitled to the benefits of the Cuban Trade Agreement, then the duties named therein with respect to such articles would not be preferential to Cuba, and the terms of the agreement would be violated.

\*       \*       \*       \*       \*       \*       \*

To sustain appellant's contention would clearly be a detriment to commerce between Cuba and the United States, for, to the extent that Cuban products are imported into the United States from countries other than Cuba, the sale of Cuban products by Cuban producers to purchasers in the United States would presumably be lessened by such importations, and thus, under appellant's construction, the rights of Cuba in its commerce with the United States would be restricted.

Applying this view to the rum here involved, it should be noted that the rum was sold by the Cuban producer to the purchaser in Bermuda more than 2 years previous to the effective date of the Cuban Trade Agreement, and yet appellant claims the benefits of such agreement with respect to a portion of the rum imported by it from Bermuda. Thus Cuban rum the subject of commerce between Bermuda and the United States would directly compete with Cuban rum offered by its producers for export to the United States.

It is conceivable that there are products of Cuban manufacture still existent in Spain, of which Cuba was once a colony, and under appellant's theory any such product, even though exported from Cuba 50 years ago, would now be entitled, upon its importation into the United States from Spain, to reduced duties under the Cuban Trade Agreement.

It seems plain to us that such was never the intention of the negotiators of either the treaty or the agreement.

In view of the record, we find that the rum herein involved was properly dutiable as assessed by the collector upon his re-reliquidation. It is plain that plaintiff is not entitled to the benefit of the Haitian Trade Agreement (T. D. 47667), as claimed. That agreement did not become effective until June 3, 1935, whereas this rum was withdrawn from warehouse at New York on November 17, 1934.

Plaintiff's claims are therefore overruled. Judgment will be rendered for the defendant.