

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

December 5, 1963

Honorable Robert S. Calvert          Opinion No. C-192
Comptroller of Public Accounts
Capitol Station                      RE:  Whether Chapters 7 and 8, Title
Austin, Texas                             122A, Taxation General, permit
                                          sales of unstamped cigarettes
                                          and untaxed cigars and tobacco
                                          products under the stated circum-
                                          stances.

Dear Mr. Calvert:

        You have requested our opinion concerning the above referenced
matter, and we copy your letter as follows:

        "In administering Chapters 7 and 8, Title 122A,
        Taxation-General, the statutes levying a tax on
        the sale of cigarettes, cigar and tobacco products,
        the office of the Comptroller of Public Accounts
        of the State of Texas understood the law permitted
        the sale and delivery of unstamped cigarettes and
        tax-free cigar and tobacco products to ships and
        barges, or their crews, when such ships are at dock-
        side in ports of call in Texas.  These ships and
        barges are engaged in interstate commerce via the
        Intercoastal Canal and the Inland Waterways of the
        United States.  The cigarettes, cigars and tobacco
        products are for consumption by members of such
        ships' crews outside the geographical boundaries of
        Texas.  Attached hereto, we file with you a copy of
        Ruling No. 1 on this subject, which rule was issued
        applying to cigarettes November 14, 1961, and amended
        to include cigars and tobacco products January 31,
        1962.  Also attached hereto is a copy of the form
        filled out by the applicant for the purchase of
        unstamped cigarettes and untaxed cigars and tobacco
        products.

        A question was recently raised as to whether
        the law permitted sales of unstamped cigarettes
        and untaxed cigars and tobacco products under the
        circumstances set out above.  Therefore, as Comp-
        troller of Public Accounts of the State of Texas,
        I respectfully request an opinion as to whether
        such sales are taxable sales under the law."

Honorable Robert S. Calvert, Page 2 (Opinion No. C- 192  )


The cigarette tax is levied on the "first sale" in this State by Articles 7.02(1) and 7.06(1), Title 122A, Taxation General, Vernon's Civil Statutes.

There is no statutory provision and no authority permitting the sale of unstamped cigarettes to ships and barges or their crews when such ships are at dockside in ports of call in Texas, for use by the crews when they are outside of Texas, although they are engaged in interstate commerce, unless the sale or transaction can be said to be an act involving interstate commerce.

We are of the opinion, under the authority of the cases hereinafter cited, that these sales do not involve interstate commerce, and are, therefore, not exempt from the cigarette tax, and the sale of unstamped cigarettes, under the stated circumstances, is illegal.

In the case of Fontenot v. Searcy and Pfaff, 78 So.2d 204 (La.Ct.App. 1955), the defendant printed and manufactured for and delivered to Leonard Krower and Son, Inc., in New Orleans, a large number of catalogues. Leonard Krower and Son, Inc., is a Louisiana Corporation having its domicile in New Orleans. The corporation received delivery of the catalogues and distributed them gratuitously to other persons, 20% in Louisiana and 80% to persons outside the State of Louisiana. The defendant paid the sales tax on the 20% delivered in Louisiana but refused to pay on the 80% delivered out of State, claiming they were manufactured by the defendant for "immediate export" and "in contemplation of and dependent upon a movement of goods in interstate commerce."

The Court said "the tax is an assessment upon the amount of retail sales, or, in other words, upon the transaction itself and not the property." ". . . once the catalogues were delivered, Searcy and Pfaff, Ltd., was without interest or concern as to what Leonard Krower and Son, Inc., would do with them. The transaction was then completed and the amount of the sale became subject to the tax, and the coincidence that the purchaser subsequently saw fit to send some of the property beyond the boundaries of Louisiana does not interfere with the right of the State to recover the amount of the taxes due."

In the case of Swan and Finch Company v. United States, 190 U.S. 143 (1903), it is stated:

> "During the years 1895, 1896, 1897, the appel-
> lant, a corporation engaged in business as im-
> porter, manufacturer and exporter of oils at New
> York City and elsewhere in the United States,
> having used in the manufacture of certain kinds
> of lubricating oils imported rape seed oil on
> which duties had been paid, placed on board of
> vessels bound for foreign ports, lubricating oils
> so manufactured, and claimed a drawback of the

> duties paid on the imported rape seed oil used
> therein. The Treasury Department allowed and
> paid the drawback on such manufactured oils as
> were shipped to foreign countries and there landed,
> but refused to pay any on such as were placed on
> board for use and consumed in use on the vessels.
> The appellant brought this suit in the Court of
> Claims to recover the drawbacks on the last named
> oils. . . ."

The Federal statutes at that time provided that where imported materials, on which the duties had been paid, were used in the manufacture of articles manufactured or produced in the United States, and then exported, there should be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such duties. Part of the lubricating oils placed on board the ship were used and consumed by the ship during the voyage, and the remaining oils were shipped to foreign countries and there landed.

The Supreme Court stated that ". . . the question is whether goods placed on board a vessel bound for a foreign port, to be used and consumed on board the vessel during its voyage, and in fact so used and consumed, are exported."

The Court held that the oil used by the ship in route is not being exported, and therefore, the appellant was not entitled to the drawback.

In the case of State Tax Commission of Utah v. Pacific States Cast Iron Pipe Company, 83 Sup.Ct. 925 (1963), the respondent, a Nevada Corporation qualified to do business in Utah, manufactures cast iron pipe in Provo, Utah, and sells the products throughout the Western States. Prices set by respondent are for the goods delivered at a specific job site, and interstate delivery is usually made by common carrier or in respondent's own equipment. In this case, however, the material was manufactured to meet specifications of specific out-of-state jobs. ". . . The contract called for out-of-state shipment, and respondent set a destination price which included the going common carrier freight charges between the two points involved. But delivery was made and title passed to the purchaser at respondent's foundry in Provo. The purchaser then transported the pipe with its own equipment to the predetermined out-of-state destination. The common carrier tariff was credited to the purchaser. . . ."

The United States Supreme Court held that a State may levy and collect a sales tax, since the passage of title and delivery to the purchaser took place within the State.

In the question before us, the cigarettes are delivered, paid for and title passes at the point of delivery at dockside, and there

is no question of interstate commerce involved. Therefore, in our opinion the sale of unstamped cigarettes to the ships and barges or their crew is contrary to the provisions of Chapter 7, Title 122A, and therefore, illegal.

Chapter 8 of Title 122A, Taxation General, V.C.S., provides for a tax on the "first sale" in this State, of cigars and tobacco products. This Chapter is patterned after and is very similar to Chapter 7 herein above discussed.

We are of the opinion that the sale of untaxed cigars and tobacco products to ships and barges for use of the crew when outside the territory of the State of Texas is illegal, for the same reasons as set forth above as to the sale of cigarettes.

## S U M M A R Y

The sale of cigarettes, cigars and tobacco products to ships and barges or their crews, when such ships are at dockside in ports of call in Texas, even though such ships and barges are engaged in interstate commerce and the cigarettes, cigars and tobacco products are to be consumed by the crew outside the boundaries of Texas, are taxable sales under the provisions of Chapters 7 and 8, Title 122A, Taxation-General, Vernon's Civil Statutes.

Very truly yours,

WAGGONER CARR
Attorney General

BY: J. H. Broadhurst
Assistant Attorney General

JHB/ja

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Marietta McGregor Payne
Joe Trimble
J. S. Bracewell
Paul Phy

APPROVED FOR THE ATTORNEY GENERAL
BY: H. Grady Chandler