13-3437-cv
*Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of October, two thousand fourteen.

PRESENT:

BARRINGTON D. PARKER,
DEBRA ANN LIVINGSTON,

*Circuit Judges,*
MICHAEL P. SHEA[*],

*District Judge.*

_____

BRISTOL-MYERS SQUIBB COMPANY,

*Plaintiff-Appellant,*

-v.-                                        No. 13-3437-cv

MATRIX LABORATORIES LIMITED
N/K/A MYLAN LABORATORIES LIMITED,

*Defendant-Appellee.*

_____

[*] Michael P. Shea, of the United States District Court for the District of Connecticut, sitting by designation.

SCOTT A. CHESIN (Henninger S. Bullock, Richard A. Spehr, Lisa R. Plush, Michael Rayfield, *on the brief*), Mayer Brown LLP, New York, NY, CARL J. SUMMERS, Mayer Brown LLP, Washington, DC, *for Plaintiff-Appellant.*

JESSICA L. MARGOLIS (Michael S. Sommer, Scott D. Tenley, *on the brief*), Wilson Sonsini Goodrich & Rosati, P.C., New York, NY, *for Defendant-Appellee.*

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court is **VACATED** and **REMANDED.**

Plaintiff-Appellant Bristol-Myers Squibb Company ("BMS") is an American pharmaceutical manufacturer that owns the patent for atazanavir, an antiretroviral drug used to prolong the lives of those suffering from HIV or AIDS. On April 17, 2011, BMS entered into an "Immunity From Suit Agreement" ("IFSA") with Defendant-Appellee Matrix Laboratories Limited ("Matrix"), a generic drug manufacturer located in India and a wholly owned subsidiary of Mylan Laboratories Limited ("Mylan"). Pursuant to the IFSA, BMS granted Matrix the right to manufacture, sell, and distribute atazanavir within a designated set of countries (the "Territory") with immunity from suit for intellectual property infringement. In addition to granting Matrix this limited set of rights, Section 3.1(d) of the IFSA provides that "[Matrix] shall not sell, distribute or otherwise transfer [atazanavir] manufactured hereunder to any third parties it reasonably believes may export the Product outside the Territory where Patents exist." J.A. 21.

BMS alleges that, soon after signing the IFSA, Matrix sold atazanavir to the Pan American Health Organization ("PAHO") and shipped the drug to the Venezuelan Ministry of Health. Venezuela is not in the Territory and BMS had applied for patents and sold a branded version of

2

atazanavir there. In response to Matrix's sale, BMS brought a breach of contract action in the United States District Court for the Southern District of New York on July 30, 2012, and filed an amended complaint on April 16, 2013. Matrix moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing, *inter alia*, that BMS failed to state a claim. The district court (Engelmayer, *J.*) granted the motion to dismiss. *Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*, 964 F. Supp. 2d 287 (S.D.N.Y. 2013). It ruled that, under the plain language of the IFSA, the agreement only allows BMS to bring a breach of contract action if Matrix violates Section 3.1(d) by selling to a third party "present in the Territory, and therefore in a position to *export* the product 'outside the [T]erritory.'" *Id.* at 297. Since BMS did not allege that PAHO was present in the Territory, it failed to state a claim. *See id.* This appeal followed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

We "review *de novo* a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing all inferences in the plaintiff's favor." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 685 (2d Cir. 2005). To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In a breach of contract case, "[t]he primary objective of a court . . . is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000). "Under New York law, which applies here, judgment as a matter of law is appropriate if the contract language is unambiguous." *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 160

3

(2d Cir. 2003). The existence of ambiguity is "a question of law for the court," and we consider a contract ambiguous if the contract's terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." *Law Deb. Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465-66 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)).

As a preliminary matter, Matrix submits that this Court should not consider BMS's arguments about the ambiguity of Section 3.1(d) because the arguments are new on appeal. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). However, this rule is "prudential, not jurisdictional," and we have exercised our discretion to entertain new arguments "where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding." *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) (citation omitted); *see also Sniado v. Bank of Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004). Considering BMS's arguments about the meaning of Section 3.1(d) is appropriate on this appeal. BMS's new arguments address the same issue as presented below: whether Section 3.1(d) is ambiguous. This is a "pure question of law" that does not require additional factual development. *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 142 (2d Cir. 2000). We therefore choose to reach the merits. *See Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 724 (2d Cir. 2013) (considering a new argument on appeal about the meaning of a contract's forum selection clause).

Turning to the meaning of the IFSA, the district court incorrectly ruled that the plain language

4

of Section 3.1(d) prohibits only transfers of atazanavir to third parties that are "present in the Territory." It is equally plausible to interpret the provision as prohibiting transfers to third parties located anywhere when the transferee takes title to the products while those *products* are present in the Territory. The phrase "present in the Territory" does not appear in the text of Section 3.1(d). Instead, the district court determined that the word "export" requires the party exporting to be present in the Territory. *See Bristol-Myers Squibb*, 964 F. Supp. 2d at 297. While this is a permissible interpretation of the word "export" in the context of the IFSA, it is not an inevitable one. "Export" means "to send or carry abroad" or "to send, take or carry (a good or commodity) out of the country." *Black's Law Dictionary* 660 (9th ed. 2009). We agree with Matrix and the district court that this term requires that, for a "third party" to "export the [atazanavir] outside the Territory," it must move the product *from* the Territory *to* some other location. *See Swan & Finch Co. v. United States*, 190 U.S. 143, 145 (1903) (deciding that "export" in the Constitution and laws of the United States generally requires "a severance of goods from the mass of things belonging to this country with an intention of uniting them to the mass of things belonging to some foreign country or other"). But neither the word "export" nor the broader structure of the IFSA requires that the third party with control over the atazanavir be itself present in the Territory. Therefore, while the district court's interpretation is permissible and may prove to be correct upon further discovery, it is not the unambiguously correct interpretation of the agreement. On remand, the court may consider extrinsic evidence concerning the contract. *Int'l Multifoods*, 306 F.3d at 83 (ruling that, if a contract is ambiguous, a court may refer to extrinsic evidence to resolve the ambiguity).

BMS argues that Section 3.1(d) extends even further than we have outlined here — prohibiting Matrix not only from transferring the product within the Territory to a third party it

5

reasonably believes will export in violation of Section 3.1(d), but also prohibiting "any sale, distribution, or transfer of Product to a third party that Mylan reasonably believes will *result in* the Product being exported outside the Territory for use in a country where BMS has active or pending patents." Appellant Br. at 9 (emphasis added). We conclude, with the district court, that the agreement cannot plausibly support this interpretation. The text of Section 3.1(d) prohibits transfers to "third parties" Matrix reasonably believes "may export" the atazanvir outside the Territory. This structure unambiguously covers only those situations in which the "third party" is performing the exportation. When the parties wanted to cover a broader set of actions, they did so explicitly. For instance, Section 8.1 of the agreement allows BMS to terminate the contract if Matrix "exports, permits, authorizes or otherwise facilitates the exportation of [atazanavir]." J.A. 22. If the word "export" could bear the meaning that BMS desires, the additional language in Section 8.1 would be superfluous. This Court will not adopt an interpretation that has "the effect of rendering at least one clause superfluous or meaningless . . . if possible." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005).

Of course, ambiguity in a contract alone is not sufficient to state a claim — BMS must also plead that Matrix breached the IFSA. The complaint alleges that "Matrix sold a significant amount of atazanavir" to PAHO and "shipped said atazanavir" to Venezuela. J.A. 10. These allegations are not sufficient to support the inference that PAHO either was present in the Territory or took title to the atazanavir in the Territory. BMS proposes that PAHO took title to the atazanavir in the Territory because its arrangement with Matrix was a "shipping contract" under the Uniform Commercial Code. This argument is unsupported by the complaint. As a result, BMS's complaint fails to state

6

a claim under either permissible interpretation of the IFSA.[1]

Finally, BMS requests the opportunity to seek leave to amend its complaint. Federal Rule of Civil Procedure 15 "provides that, soon after filing an initial pleading, 'a party may amend its pleading only with the opposing party's written consent or the court's leave,' but that '[t]he court should freely give leave when justice so requires.'" *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2)). Our general practice is to review "a district court's decision whether to grant or deny leave to amend, rather than making that decision for ourselves in the first instance." *Id.*; *see also Hayden v. Paterson*, 594 F.3d 150, 161 n.9 (2d Cir. 2010). In light of our decision that the district court incorrectly construed the IFSA, we find remand appropriate so BMS can seek leave to amend its complaint.

For the foregoing reasons, the judgment of the district court is **VACATED** and **REMANDED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[1] BMS's additional argument that Matrix shipped atazanavir by using a common carrier and thus "transfer[red] [it] . . . to [a] third part[y]" in violation of Section 3.1(d) is also unsupported by the complaint. Furthermore, the proposition that using a common carrier to ship the drug outside the Territory to places where BMS has patents violates Section 3.1(d) is inconsistent with the text of that provision. Section 3.1(d) prohibits "sell[ing], distribut[ing] or otherwise transfer[ring]" atazanavir to a third party. Simply giving temporary custody over atazanavir to a common carrier is not "sell[ing]" or "distribut[ing]" the product, nor is it a "transfer" within the context of the provision. BMS itself acknowledges that this is "not the best reading of the contract." Reply 10.